In the
**UNITED STATES DISTRICT COURT**
for the **SOUTHERN DISTRICT OF INDIANA**,
NEW ALBANY DIVISION

| | |
|---|---|
| **C & G TECHNOLOGIES, INC.**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CAUSE NO. 4:09-cv-56-SEB-WGH |
| | ) |
| **SOUTHERN MEDICAL IMAGING, LLC**, | ) |
| | ) |
| Defendant. | ) |

**E N T R Y**

**Denials of Defendant's Motion to Dismiss or Alternatively Transfer (doc. 12) and Plaintiff's Motion to Remand (doc. 19)**

Plaintiff C&G Technologies, Inc., ("C&G"), is a Kentucky corporation with its principal place of business in Jeffersonville, Indiana. It's business is supplying and servicing refurbished CT scanners. Defendant Southern Medical Imaging, LLC, ("SMI"), is a Louisiana limited-liability corporation with its office in Baton Rouge, Louisiana. It sells and leases radiologic equipment, such as CT scanners, to end users. In late 2005, SMI had an end-user doctor who was looking for a mobile CT machine for his practice. In March, 2006, C&G and SMI executed a contract for C&G to obtain and refurbish a CT scanner, install the scanner in a refurbished trailer, and deliver the trailer to Louisiana. After delivery, the doctor asserted that there were serious defects with the scanner that were not resolved by C&G.

In November, 2006, the doctor filed suit in Louisiana state court against SMI seeking either a refund or a reduction in price and SMI counterclaimed for the remaining payment under

1

its contract with the doctor.  In March, 2008, soon after the doctor amended his complaint to add claims against C&G,  SMI and the doctor reached a partial settlement, resolving all claims between them except SMI's claim for attorney's fees.  The settlement requires the doctor to indemnify SMI against any claims by C&G.  In August, 2008, C&G removed the Louisiana state-court case to the United States District Court for the Middle District of Louisiana, arguing diversity and federal-question jurisdiction.  *Southwest Mississippi Anesthesia, P. A. v. C & G Technologies, Inc.*, Cause no. 3:08-cv-483-RET-DLD (M.D. La.).  On June 30, 2009, the Court granted the doctor's motion for remand to Louisiana state court for the reasons that the parties are not diverse and the complaint did not assert a federal question.  *Id.*, (doc. 30, 31, and 32).

On April 3, 2009, C&G filed suit against SMI in the Circuit Court for the County of Washington in Indiana.  *C & G Technologies, Inc. v. Southern Medical Imaging, LLC*, Cause no. 88C01-0904-CC-113.  The complaint pleads two state-law claims:  breach of contract for the remaining amount owed on the mobile CT unit (plus interest, costs, and fees) and replevin in order to obtain possession of and/or rent for the unit.  On May 1, 2009, SMI removed the suit to this Court on grounds of diversity of citizenship (doc. 1).

Presently before the Court are competing motions:  SMI's motion to dismiss this suit for lack of personal jurisdiction or, alternatively, to transfer it to the Middle District of Louisiana (doc. 12) and C&G's motion to remand this suit to Indiana state court because the parties agreed to state-court resolution of their dispute (doc. 19).

**Remand**

C&G argues that this suit must be remanded because SMI "executed a valid and

2

enforceable forum selection clause for disputes" that selected the Indiana state courts for Washington County. (Motion to Remand (doc. 19) at 1). SMI responds that it did not agree to the clause in question because it was not part of the contract that it executed, appearing only in a document that was not given to SMI until C&G filed this suit. In addition, SMI argues that the clause in question designates only a permissive, not an exclusive, forum. A valid, enforceable forum selection clause is grounds for remand. C&G relies on *Roberts & Schaefer Co. v. Merit Contracting, Inc.*, 99 F.3d 248, 252 (7th Cir. 1996), *cert. denied*, 520 U.S. 1167 (1997), which held that "[e]nforcing a forum selection clause in a contract is a permissible basis for remand."

The parties executed a three-page document that is not titled but has a small header reading "Quote: LS-16 Mobile" appearing at the top of each page below C&G's name in large font. We shall refer to this document as the "Quotation." Immediately below the roster of parties and contact information that begins the Quotation is a separately-delineated paragraph reading:

> **C & G Technologies, Inc.** (C & G) is pleased to submit the following quotation and agrees to sell the products and services described at the prices and deliveries stated, subject to the conditions stated in this quotation, *and the Standard Conditions shown on the last two (2) pages of this quotation*, and subject to Credit approval.

(Doc. 20-1, at 1) (italicized emphasis added). Immediately above the signature lines on the third page of the Quotation is the following paragraph:

### Acceptance and Agreement

> Signatures (below) of authorized representatives of Seller and Buyer organizations constitutes mutual agreement to accept and comply with the terms and conditions set forth in this quotation, *and the Standard Conditions attached hereto and made part of this agreement*. Warranty details are available on request.

3

(*Id*. at 3 (italicized emphasis added)).  In a two-page document titled "Standard Conditions," which is not signed or initialed by either party, the following paragraph appears:

> **Arbitration:**
> Any and all disputes arising under, in connection with, or incidental to this Agreement shall be submitted to binding arbitration in Salem, Indiana. Arbitration shall be conducted in accordance with the rules of the American Arbitration Association.  Buyer shall pay fifty (50) percent of fees charged by the arbitrator and the Seller the remaining fifty (50) percent.  Judgment upon the award rendered by the Arbitration may be entered into any court having jurisdiction.  *The Buyer and Seller agree to jurisdiction being* [*sic*] *the courts of the State of Indiana for Washington County*.  The Proposal and these Standard Conditions shall be construed in accordance with Indiana law.

(Doc. 20-1 at 4 (italicized emphasis added)).

C&G contends that, by explicit reference, the two-page Standard Conditions document was incorporated into, and became part of, the Quotation, thus rendering both documents the parties' effective, and binding, agreement.  It argues that the clause in the Standard Conditions whereby SMI agreed "to jurisdiction being [*sic*] the courts of the State of Indiana for Washington County" operates as a binding forum selection clause foreclosing the litigation of this suit in this Court.  SMI asserts, *via* the affidavits of both of its principals, that C&G did not provide it with the separate document entitled "Standard Conditions" and that it was unaware of its existence until C&G submitted it as part of this suit.  Crifasi Affidavit (doc. 24-2), ¶¶ 16 and 17; Roubique Affidavit (doc. 25-1), ¶¶ 40 and 41.  It contends that it understood the Quotation's opening reference to "the Standard Conditions shown on the last two (2) pages of this quotation" to refer, not to the separate two-page Standard Conditions, which it did not have and was unaware of, but to the last two pages of the three-page Quotation, which also contained terms and conditions answering the same description.  Roubique Affidavit, ¶ 39.  Regarding the

Quotation's second reference to Standard Conditions — describing them as "attached hereto and made part of this agreement" — SMI contends that the ambiguity or uncertainty arising from the absence of the document was created by C&G when it twice failed to send the document and, therefore, should be resolved against it.

On this motion, the Court is persuaded by SMI's assertion that the Standard Conditions are not part of the parties' agreement. C&G did not present any evidence countering SMI's affidavits averring that it was not provided with the two-page Standard Conditions and was not aware of the document's existence until this suit. Neither did C&G assert or argue, even without supporting evidence, that it sent the Standard Conditions to SMI or that SMI indicated its awareness of its provisions before this suit. SMI's averment that it interpreted the Quotation's initial reference to "Standard Conditions" as meaning the Quotation's last two pages is reasonable and consistent with its not being aware of the separate two-page document; and C&G did not argue that such an interpretation is unreasonable or disingenuous. C&G relies solely on the Quotation's second and final reference to "the Standard Conditions, attached hereto and made part of this agreement" and argues simply that SMI's underlying signature agreeing to this language "cannot be ignored." (Response to Defendant's Motion to Dismiss (doc. 32) at 5). But C&G fails to definitively assert, let alone prove, that SMI, in fact, had the two-page Standard Conditions when it executed the Quotation; it fails to explicitly assert that SMI's signature under the reference to attached Standard Conditions is *proof* that SMI had the document; and it fails to argue or provide legal support for the proposition that such a reference has binding effect *regardless* of whether a referenced attachment did, in fact, exist and was attached.

5

Ultimately, however, the question of whether the Standard Conditions is part of the parties' agreement is irrelevant to the issue of remand: even if the Standard Conditions document constitutes part of the parties' agreement, the forum selection clause does not justify a remand. First, the clause in question is part of a paragraph mandating that "all disputes arising under, in connection with, or incidental to this Agreement" be submitted to binding arbitration in the city of Salem in Washington County, Indiana, and providing that a judgment upon an award rendered in arbitration "may be entered into any court having jurisdiction."[1] The clause in question is an agreement by the parties that said "jurisdiction" includes the courts of Washington County in Indiana. The clause is thus restricted, by its own terms, to entering an arbitration award; it is not a stand-alone consent to jurisdiction for all litigation. Because C&G is not seeking to enter an arbitration award in this suit — instead, it is seeking to resolve its disputes by litigation despite the terms of the arbitration paragraph on which it relies, thus waiving its provisions — the clause consenting to jurisdiction in Washington County is inapplicable.

Second, and more important, the clause does not select an exclusive forum. By its terms, the parties agree only that jurisdiction is in the courts of Washington County and thus waive any objections to personal jurisdiction or venue. There is nothing in the language of the clause excluding any other forum where jurisdiction and might lie. If an exclusive forum were intended, then the immediately preceding clause — providing that a judgment on an arbitration

---

[1] Although both parties refer to the term in question as a forum selection clause — as do we, for the sake of convenience — the clause is, in fact, a consent to jurisdiction. *See Hoosier Energy Rural Electric Coop., Inc. v. Amoco Tax Leasing IV Corp.*, Cause no. IP 89-816-C, *Memorandum Entry*, 1992 WL 684355, *3 and n. 6 (S.D. Ind., Mar. 17, 1992), *affirmed*, 34 F.3d 1310 (7th Cir. 1994).

award may be entered into "any court having jurisdiction" — would be superfluous.

C&G argues that, even if the forum selection clause is permissive, it should be enforced nonetheless by remand because SMI agreed thereby to state-court jurisdiction. Again, however, the clause is only a consent to jurisdiction in state court; it does not exclude any other jurisdiction and does not waive SMI's right to federal removal. Such a consent would not be without substance because it does waive objection to personal jurisdiction in the state's courts.

C&G's Motion to Remand (doc. 19) is denied.

## Dismissal

SMI argues that this suit should be dismissed under Fed. R. Civ. P. 12(b)(2) because SMI lacks the minimum contacts with Indiana that are required to vest this Court with specific personal jurisdiction over SMI.[2] A federal court exercising diversity subject-matter jurisdiction in a case has personal jurisdiction over a non-resident defendant only if the forum state's law subjects the defendant to *in personam* jurisdiction in the state's courts and such jurisdiction satisfies federal due process.[3] *International Shoe Co. v. Washington*, 326 U.S. 310 (1945); *Purdue Research Foundation v. Sanofi-Synthelabo, S. A.*, 338 F.3d 773, 779 (7th Cir. 2003). In Indiana, the first inquiry is subsumed within the second because Indiana law provides that its courts "may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States." Indiana Trial Rule 4.4(A). *Purdue Research*, 338 F.3d at 779 n. 9.

---

[2] The parties do not dispute that there is no general jurisdiction over SMI in Indiana.

[3] SMI does not contend that C&G did not effect valid service of process.

The due process inquiry "must focus on whether it is fundamentally fair to require the defendant to submit to the jurisdiction of the court with respect to this litigation." *Id.* at 780.

> The Supreme Court consistently has made it clear that, in employing this test, we must focus on the factor of "foreseeability." The foreseeability that is significant for this purpose is whether the defendant could have anticipated being haled into the courts of the state with respect to the matter at issue. Notably, it must be the activity of the defendant that makes it amenable to jurisdiction, not the unilateral activity of the plaintiff or some other entity. This requirement is designed to ensure that the defendant retains sufficient, albeit minimal, ability to structure its activities so that it can reasonably anticipate the jurisdictions in which it will be required to answer for its conduct. In any given case, there must be some showing that the defendant purposefully availed itself of the privilege of conducting activities within the forum state. This requirement ensures that a defendant's amenability to jurisdiction is not based on fortuitous contacts, but on contacts that demonstrate a real relationship with the state with respect to the transaction at issue. To this end, the Supreme Court repeatedly has asked whether the defendant has deliberately engaged in significant activities within the forum state or whether it has created continuing obligations between itself and a resident of the forum.

*Id.* at 780-81.

A defendant's purposeful contacts with the forum state may then be evaluated to determine whether subjecting the defendant to litigation in the forum "would be compatible with 'fair play and substantial justice.'" *Id.* at 781. Factors that may be considered include "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of [the underlying dispute], and the shared interest of the several States in furthering fundamental substantive social policies," *id.*, but consideration of these factors "rarely will justify a determination against personal jurisdiction" because they may be accommodated by non-jurisdictional means, such as choice-of-law rules and venue changes, *id.* at 781 and n. 10.

The caselaw affords some specific guidance for application of these standards in the contract context. Courts should follow a "highly realistic," or holistic, approach that considers the parties' transaction as a whole. *Id.* at 781 ("contracting with an out-of-state party alone cannot establish automatically sufficient minimum contacts in the other party's home forum") and 785. All aspects of the contract relationship must be considered, including "prior negotiations, contemplated future consequences, the terms of the contract, and the parties' course of actual dealing with each other." *Id.*

C&G is required to make out a *prima facie* case of personal jurisdiction and is entitled to have any conflicts in the submitted evidence resolved in its favor. *Id.* at 782-83.

SMI argues that the following facts prove that it did not purposefully establish sufficient minimum contacts with Indiana:

(1) The parties negotiated their agreement by telephone, e-mail, and fax; no SMI representative traveled to Indiana during negotiations.

(2) The only physical contact with Indiana occurred when an SMI representative made a day-long trip to view the refurbishment of the scanner after the contract was executed.

(3) C&G understood that the end-user of the mobile scanner was a physician in Louisiana.

(4) C&G agreed to accept payments from the physician.

(5) The contract provided that C&G would deliver the mobile scanner to the physician in Louisiana and C&G actually did make such delivery.

(6) The contract provided that C&G would service the mobile scanner in Louisiana and

C&G actually made several service calls to Louisiana.

(SMI Brief in Support of Motion to Dismiss (doc. 13) at 10).  SMI concludes:

> C&G must be deemed to have understood that the future consequences of its sale, delivery to Louisiana, and service of the equipment in Louisiana would hold the prospect for litigation in Louisiana in the event of a problem with the equipment.  Indeed, PTC [the end-user] has filed suit against C&G in Louisiana based on alleged defects in the equipment.

(*Id.*)

In response, C&G relies primarily on the forum selection (consent-to-jurisdiction) clause in the Standard Conditions whereby SMI consented to jurisdiction in Indiana state courts for Washington County.[4]  Unlike subject-matter jurisdiction, personal jurisdiction is waivable and a contractual forum selection clause can constitute such a waiver.  *IFC Credit Corp. v. Aliano Bros. General Contractors, Inc.*, 437 F.3d 606, 609-10 (7th Cir. 2006).  However, SMI has presented evidence, by way of the Crifasi and Roubique Affidavits, that C&G never provided SMI with the Standard Conditions document, and that SMI was unaware of its existence, until this suit was filed.  As noted above, C&G presented no contrary affidavits or other evidence.  Rather, C&G relies on the Quotation's two references to the "attached" Standard Conditions but provided no authority as to the legal effect of such references to unattached documents.  Therefore, although C&G is entitled to resolution of all factual disputes in its favor on this motion, it has failed to demonstrate a factual dispute as to its provision of, and SMI's receipt of, the Standard Conditions containing the forum selection clause.  For purposes of this motion,

---

[4] Although the point wasn't mentioned, we assume that a party's consent to personal jurisdiction in a state's courts also constitutes consent to personal jurisdiction in the federal district courts in that state.  As explained above, federal personal jurisdiction depends upon state personal jurisdiction.

therefore, we disregard the forum selection clause.

Nonetheless, independently of the forum selection clause, we find that C&G has made a *prima facie* showing that SMI has sufficient minimum contacts with Indiana that this Court's exercise of personal jurisdiction over it comports with due process. While no SMI representative physically visited Indiana during the negotiations or the execution of the parties' agreement, SMI initiated contact with C&G and actively solicited its involvement in the contract by telephone, e-mail, and fax. *See*, *e.g.*, Roubique Affidavit ¶ 18 ff. *Purdue Research*, 338 F.3d at 781;[5] *Wesleyan Pension Fund, Inc. v. First Albany Corp.*, 964 F.Supp. 1255, 1264 (S.D. Ind. 1997). Although SMI asserts that its representative made only one post-contract-formation visit to C&G's place of business in Indiana to conduct a progress review, Roubique Affidavit ¶ 28, such pre-delivery progress inspections and approvals were specifically provided for in the Quotation, Quotation, "Payment Terms,"[6] and were, therefore, foreseeable and actively anticipated by SMI. In addition, SMI foresaw, and actively caused, C&G's refurbishment of the

---

[5] "It is especially important to note that, although territorial presence may indeed be an important factor in many cases, it is by no means essential. If, for example, a commercial defendant's efforts are directed toward a particular jurisdiction, the fact that the actor did not actually enter the jurisdiction is not of crucial importance. As the Supreme Court wrote in *Burger King*, 'a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted.'"

[6] "**Payment Terms:** 50% [hand-amended to 35%] down payment with order. We will then secure the unit and begin the refurbishing process. The trailer is already in stock, and is being refurbished now. When the CT is refurbished and ready for inspection, we will require an additional payment of 25% upon your approval. At this point, the trailer should be ready for inspection as well. Once again, with your OK, we will begin the installation of the CT into the refurbished trailer. When the completed unit is done, we will seek your approval one more time for a final sign-off. AT this point, we will collect the final 25% and the unit will be ready for you to use!"

CT scanner and trailer at its facilities in Indiana.

SMI's argument that "C&G must be deemed to have understood that the future consequences of its sale, delivery to Louisiana, and service of the equipment in Louisiana would hold the prospect for litigation in Louisiana" misses the point. The relevant issue is not whether C&G foresaw or understood that it could be sued in Louisiana but whether SMI foresaw and understood that it could be sued in Indiana. C&G sued SMI in Indiana state court, thus subjecting itself to personal jurisdiction in the courts of Indiana and in its federal courts.[7] Therefore, the question on the present motion is whether this Court has constitutional personal jurisdiction over SMI based on SMI's minimum contacts with Indiana — not C&G's contacts with Louisiana. The Court concludes that it does have sufficient contacts to warrant a proper exercise of personal jurisdiction over SMI and denies its motion to dismiss.

**Transfer**

As an alternative to dismissal, SMI asks for transfer of this case to the United States District Court for the Middle District of Louisiana[8], pursuant to 28 U.S.C. § 1404(a) "for the convenience of witnesses and parties and access to other evidence." (SMI Brief in Support (doc. 13) at 13). Transfers of venue are assigned to the substantial discretion of the court. *American Commercial Lines, LLC v. Northeast Maritime Institute, Inc.*, 588 F.Supp. 935, 945 (S.D. Ind.

---

[7] Venue questions aside.

[8] At the time the present motions were briefed, the doctor's case against SMI and C&G, which had been removed to the Middle District of Louisiana, was pending. However, after briefing, the Middle District of Louisiana remanded that case to the originating Louisiana state court. Neither side advised the Court of that decision by supplemental briefing on the present motions.

2008).

SMI's arguments for transfer are (1) the "key witnesses" who will testify regarding the alleged defects in the mobile scanner will be the end-user doctor and his radiology staff, all in Louisiana; (2) any inspection of the mobile scanner must be conducted in Louisiana; and (3) C&G cannot complain of inconvenience from litigating in Louisiana because it delivered the scanner there, made several service calls there, advertises immediate service responses throughout the United States, and is currently litigating the doctor's suit in Louisiana.[9]

It cannot simply be asserted that the "key witnesses" regarding any alleged defects in the mobile scanner will be the doctor and his staff or that alleged defects in the scanner are the key or determinative issue in the case. Such facts must be shown. *American Commercial*, 588 F.Supp.2d at 945-46. If alleged defects are a substantial issue in the case, then it also can be expected that C&G will be naming its own expert witnesses. In addition, SMI fails to present any evidence on or even to assert the relative inconvenience of expected witnesses in this case.

Second, while SMI asserts that any inspection of the scanner must be conducted in Louisiana, it fails to assert or show that any such inspection will be required or is anticipated, that such an inspection would require a significant expenditure of resources, or that such expenditure will be inconvenient to SMI if this case is not transferred. In fact, if a costly inspection is anticipated as part of pre-trial discovery, the fact that it will be performed in

---

[9] SMI also argued that it would be inefficient to litigate the same issues involved in this and the Louisiana case in two different fora. But this argument was made while the Louisiana case was pending in federal court and the two suits could have been consolidated. Transfer now would not prevent litigation in two different fora.

Louisiana would appear to be convenient for SMI.

Third, SMI's arguments about why C&G should not be heard to complain about litigating in Louisiana misses the mark.  SMI must show why it is inconvenient for SMI to litigate in Indiana, not why it is convenient for C&G to litigate in Louisiana, and it has not done so.  That C&G delivered the mobile scanner to Louisiana years ago, that its service technicians traveled to Louisiana in the past to service the mobile scanner, and that C&G is prepared to (or, at least, advertises that it will) conduct service calls nation-wide — all business-related activity — does not necessarily mean that the additional resources that it would expend in order to conduct this litigation in Louisiana presents no inconvenience worthy of consideration.  If this case were transferred to Louisiana, then C&G would likely experience greater non-business-related interruptions of its operations in order for management personnel and other employees to travel to Louisiana in connection with this case than if it remained in this Court.  Transfer would likely present greater non-business-related expenses as well.  That C&G has conducted business in Louisiana and conducts business nation-wide does not mean that it will experience no comparative inconvenience from conducting litigation in Louisiana.

The parties also argue about the effect of the forum selection clause on transfer of venue.  Because we have found, for the purposes of these motions, that C&G has not shown that the forum selection clause is part of the parties' agreement, it is irrelevant to the transfer issue.[10]

---

[10] A forum court's better familiarity with the governing state's law is a factor to be considered as well.  *American Commercial*, 588 F.Supp.2d at 946-47.  Although the Standard Condition's arbitration paragraph contains an agreement that Indiana law would govern "The Proposal and these Standard Conditions," which would argue for denial of transfer, we have rejected the Standard Conditions as a consideration.  The parties did not otherwise argue which

"A plaintiff's choice of forum is not to be disregarded lightly," *American Commercial*, 588 F.Supp.2d at 945, and merely shifting inconvenience from one party to the other does not justify transfer, *id*. Because SMI has not shown that a transfer is warranted, its motion is denied.

## Conclusion

Defendant's Motion to Dismiss or Alternatively Transfer (doc. 12) and Plaintiff's Motion to Remand (doc. 19) are **DENIED**.

Date:  01/11/2010

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

---

state's law would govern the issues in this case.

Distribution:

David P. Allen
ALLEN ALLEN & BROWN
davidallen@allenlawyers.com

Jeffrey L. Hansford
BOEHL STOPHER & GRAVES, LLP
jhansford@bsg-in.com

Curtis Paul Moutardier
BOEHL STOPHER & GRAVES LLP
cmoutardier@bsg-in.com

Samuel Bradley Rhorer
RHORER LAW FIRM
bradr@rhorerlaw.com